# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

STEVEN SZEKELY,   *

Plaintiff   *

v   *   Civil Action No. ELH-17-3610

D.P.S.C.S., *et al.*,   *

Defendants   *

\*\*\*

## MEMORANDUM OPINION

Steven Szekely, a self-represented Maryland inmate, filed suit under 42 U.S.C. § 1983 against multiple defendants, concerning problems with the treatment of inmates addicted to drugs and alcohol. ECF 1. In particular, he claims violations of Titles II and IV of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq.*; Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.*; and the Eighth and Fourteenth Amendments to the Constitution. *Id.* at 1. The Court also granted plaintiff's first motion to amend (ECF 7), adding two defendants. ECF 15.

Defendants are the Maryland Department of Public Safety and Correctional Services ("DPSCS"); the Maryland Division of Correction ("DOC"); Roxbury Correctional Institution ("RCI"); Secretary Steven Moyer; Dayena Corcoran, Commissioner of DOC; former RCI Warden Richard Miller; WCI/NBI; Warden Richard Graham; and the State of Maryland. They filed a Motion to Dismiss or, in the Alternative, Summary Judgment. ECF 19. It is supported by a memorandum (ECF 19-1) (collectively, the "Motion") and numerous exhibits. Although notified of his right to do so, ECF 20, plaintiff has not responded to defendants' Motion, and his time for doing so has expired.

The matter is now ripe for review. The Court finds a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, Defendants' Motion, construed as a motion for

summary judgment, shall be GRANTED.

## I. BACKGROUND

Szekely claims to be an incarcerated drug addict and purports to bring this action on behalf of all current and former incarcerated drug addicts in Maryland state prisons.[1] ECF 1 at 1-2, 5 He alleges that the DOC has failed to keep DOC facilities free from illegal drugs, and that incarcerated drug addicts who are unable to resist the temptation of the available drugs suffer numerous consequences. *Id.* at 2-3. Specifically, Szekely asserts that drug-addicted inmates are prevented from effective rehabilitation and that they face loss of privileges, reduced ability to accrue good time credit, increased security classification, denial of parole, and other disciplinary sanctions if they are found to have used illegal substances while incarcerated. *Id.* at 2-5, 11-12. He also asserts that, when the drugs are ingested by the incarcerated drug addicts who are apparently unable to resist, the available drugs cause detrimental physical effects and impair mental functioning which, in turn, hinder such prisoners from being able to pursue their legal rights. *Id.* at 10-11.

Szekely's Complaint largely takes the form of a policy argument rather than presenting allegations of specific legal injuries that he has suffered. *See, e.g.*, *id.* at 4 (arguing that it is counterproductive to punish institutional drug users with the denial of privileges like participation in "Family Day" because "a drug addict should be encouraged to strengthen family ties through visits and Family Day participation, not sanctioned with loss," but failing to allege that he has

---

[1] Plaintiff has not sought authorization to pursue this suit as a class action. In any event, even if he had sought authorization, it would have been denied pursuant to this Court's Local Rules. Loc. R. 101.1(a) ("Individuals who are parties in civil cases may only represent themselves.").

personally been barred from participating in Family Day). Although Szekely presents a parade of possible consequences, the only specific harms that he comes close to alleging that he has personally suffered are: "Plaintiff's life is threatened through drug abuse, possible overdose, and the gang activity that follows a drug culture," *id.* at 4, and Plaintiff is "being punished and forced to serve lengthened sentences" by being unable to earn good time credit and might have parole denied if found guilty of using drugs in prison. *Id.* at 11-12. Notably absent from Szekely's Complaint is any reference to a specific date or details surrounding either of these general allegations.

Szekely claims defendants' actions and inactions violate his constitutional rights under the Eighth and Fourteenth Amendments. *Id.* at 2. He also claims that the exclusion of drug-addicted inmates from various institutional programs and privileges violates the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq*.

## II. LEGAL STANDARD

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF 19. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside

3

of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222-23 (4th Cir. Nov. 29, 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5

C. WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied

"where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Szekely has not filed a Rule 56(d) affidavit or a functional equivalent. Moreover, I am

satisfied that it is appropriate to address the defendants' Motion as one for summary judgment, because consideration of the defendants' evidentiary submissions will facilitate resolution of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs*

*v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248. On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id*. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because Szekely is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the Court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III. DISCUSSION

**A. ADA & Rehabilitation Act Claims**

The Complaint is premised on Szekely's deprivations of various benefits, including prison programs, due to his drug use. The ADA and Rehabilitation Act offer certain legal protections to

"qualified individual[s] with a disability." 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."); 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.").

However, both acts exclude from the definition of "individual with a disability" an "individual who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12210(a) ("For purposes of this chapter [of the U.S. Code that contains the ADA], the term 'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use."); 29 U.S.C. §§ 705(20)(c)(i), 794(a) (applying almost identical definition in Rehabilitation Act). Because Szekely's claimed disability is that he is a user of illegal drugs, and he alleges that the use of such drugs is the basis for his denial from certain prison programing and privileges, his claims under the ADA and Rehabilitation Act necessarily fail.

**B. Constitutional Claims**

　　1. Factual Deficiency

Szekely's constitutional claims do not suffer the same statutory prohibition as his claims under the ADA and Rehabilitation Act. These claims are nonetheless deficient. Szekely has failed to provide sufficient details in support of his allegations, as required by Fed. R. Civ. P. 8.

Critically, Szekely has failed to explain the role of the individual defendants in the claimed

9

harms or provide dates or details about the occasions on which he suffered the alleged harms. Although some of the claims are plainly legally inadequate and would fail even if Szekely had provided additional facts,[2] it is possible that other allegations could be added to state a prima facie constitutional claim.

For example, depending on the facts, Szekely might be able to state a failure to protect claim based on his references to "the gang activity that follows a drug culture." ECF 1 at 4. If insufficient factual allegation was the sole defect, the Court would be inclined to give Szekely the opportunity to amend his Complaint, particularly in view of his pro se status. However, as detailed below, Szekely has also failed to comply with administrative prerequisites to filing, rendering the opportunity to amend futile at this time.

2. Exhaustion

Defendants assert that Szekely's claim has not been properly presented through the administrative remedy procedure and therefore it must be dismissed pursuant to 42 U.S.C. §1997e. ECF 19-1 at 4-5, 19-20. The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e.

---

[2] For example, Szekely argues that he must serve a "lengthened" sentence—by which he apparently means the full length of the sentence as issued by the criminal court—because his alleged drug use results in his inability to earn good time credit and serves a reason for denying him parole. ECF 1 at 11-12. Even if he added specific factual allegations, this allegation could not yield a colorable Eighth Amendment claim because requiring one to serve the full length of his lawful sentence is not cruel and unusual punishment—rather, it is simply punishment.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).[3]

Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

---

[3] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id*. at 651, 898 A.2d at 960 (citation omitted). Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id*., nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC. *See Abramson v. Correctional Med. Servs., Inc*., 359 Md. 238, 753 A.2d 501 (2000).

On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement. This is so even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

Nevertheless, a claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, ____ U.S. ____, 136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 136 S.Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F. Supp. at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

However, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross v. Blake*, ____ U.S. ____, 136 S.Ct. 1850 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id.* at 1855. In particular, it rejected a

12

"special circumstances" exception to the exhaustion requirement. *Id*. at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 1855.

The *Ross* Court explained that an administrative remedy is available for purposes of the PLRA if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S. at 738). Exhaustion is also required even though the full relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741. Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30.

As a prisoner, Szekely is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Moreover, exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).

Nevertheless, the *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S. Ct. at 1859. These are when the remedy operates as a "simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; the administrative scheme might be so "opaque" as to become "practically speaking, incapable of use"; and prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1859-60.

The Maryland Department of Public Safety and Correctional Services has made an "administrative remedy procedure" ("ARP") available to Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code (2008 Repl. Vol.), Correctional Services Article ("C.S."), §§ 10-201 *et seq.*; Code of Maryland Regulations ("COMAR") 12.07.01.01B(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against…official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC]…against any officials or employees of the [DOC]…arising from the circumstances of custody or confinement." COMAR 12.07.01.01B(8).

To pursue a grievance, a prisoner confined in a DOC facility may file with the Inmate Grievance Office ("IGO") a grievance against any DOC official or employee. C.S. § 10-206(b). However, if the DOC institution has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See* C.S. § 10-206(b); *see also* OPS.185.0002.02.[4] And, DPSCS has established ARP process that applies to DOC facilities. OPS.185.0002.02.

---

[4] OPS.185.0002 is an Executive Directive created by the DPSCS, titled "Administrative Remedy Procedure (ARP)" ("ARP Directive"). The ARP Directive was submitted as a defense exhibit in the case of *Payton v. Bishop*, ELH-15-3648, ECF 16-2.

Effective August 14, 2015, the ARP Directive established the "policy and procedures for an Administrative Remedy Procedure (ARP) . . . to provide a method for resolving an inmate complaint related to specific conditions of confinement." *Id*. Similarly, DCD #185-003 and DCD #185-004 were submitted as exhibits in ELH-15-3645, at ECF 16-3 and 16-4, respectively. All of these exhibits are subject to judicial notice.

"[A] court may properly take judicial notice of 'matters of public record' and other

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official." OPS.185.0002.05C(1). C.S. § 1-101(k) defines a managing official "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." In the DOC, each facility's warden is responsible for the administrative remedy procedure at the institutional level. DCD # 185-003VI. Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.07.01.05A.

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP. In that circumstance, the prisoner has 30 days to file an appeal with the DPSCS's Deputy Secretary for Operations or that official's designee. OPS.185.0002.05C(2). For prisoners in DOC facilities, the Commissioner of Correction is the official to whom this appeal is sent. DCD # 185-004VI.

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the Inmate Grievance Office ("IGO"). OPS.185.0002.05D; C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B; *see also* DCD 185-002, § VI(N)(1). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's

---

information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see* Fed. R. Evid. 201(b)(2) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc*., 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt County Mem'l Hosp*., 572 F.3d 176, 180 (4th Cir. 2009).

response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B.

An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208(2)(c); COMAR 12.07.01.07-.08. A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(i) & (ii); COMAR 12.07.01.10A. However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)(2), (c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. But, an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court . . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *See Kitchen v. Ickes*, Civil Action No. DKC-14-2022, 2015 WL 4378159, at

*8 (D. Md. July 14, 2015); *see also Blackburn v. S. Carolina*, No. C A 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009), *aff'd*, 404 F. App'x 810 (4th Cir. 2010); *Miller v. McConneha,* JKB-15-1349, 2015 WL 6727547, at *3-4 (D. Md. Nov. 11, 2015).

Defendants have offered the sworn declaration of Trudy Baker, Litigation Coordinator for Roxbury Correctional Institution. ECF 19-3 at 1-2. She avers, *id.* ¶ 3:

> 3. A search of the available records reveals that Mr. Szekely did not file any administrative remedy complaints in 2014 and 2015 and, since then, filed only the attached administrative remedy complaints up until his . . . January 11, 2018 transfer to the Western Correctional Institution: RCI-0801-16; RCI-0694-17; RCI-0695-17; RCI-0696-17; RCI-0697-17; and RCI-0011-18.

The Litigation Coordinator attached copies of each of these administrative grievances (and an unmentioned grievance, RCI-0015-18, dated January 10, 2018, but not received by the RCI Warden's office until the day after Szekely's transfer) and affirmed their authenticity. *Id.* ¶ 4; *see* ECF 19-3 at 118-61.[5] Other than RCI-0011-18, the identified administrative grievances are irrelevant to the instant action, as they concern discrepancies over the funds in Szekely's inmate account, allegations that Szekely's property was wrongfully taken, claims that he was denied grievance forms, and critiques of the food served to inmates. *Id.* at 118-145, 160-61.

Administrative grievance RCI-0011-18 is directly relevant to the instant complaint; indeed, a substantial part of the grievance is merely a copy of Szekely's Complaint to this Court. *Id.* at 146-59. However, Szekely submitted RCI-0011-18 on January 2, 2018, approximately one month *after* filing the instant Complaint. *Id.* at 146. Thus, RCI-0011-18 does not comport with the PLRA's requirement that exhaustion must be completed prior to suit.

---

[5] The entire exhibit consists of 358 pages.

Szekely does not claim that he has otherwise exhausted all of his administrative remedies via some ARP grievance that the defendants failed to present to the Court. Nor does he claim that administrative remedies were "unavailable" to him for any of the reasons specified by the *Ross* Court. Accordingly, because Szekely has failed to exhaust his administrative remedies, his claims must be rejected.

### III. CONCLUSION

For the reasons stated above, the Court GRANTS defendants' Motion, construed as a motion for summary judgment. However, this action shall be closed, *without prejudice* to Szekley's right to refile his constitutional claims after he has fully exhausted his administrative remedies as to such claims, and provided that he presents adequate factual allegations in support of any refiled claim.

A separate Order follows.

Date: December 14, 2018

/s/
Ellen L. Hollander
United States District Judge